This time, we'll hear United States v. Cummings. This is for you. Thank you. Good morning. Good morning, Your Honors. Mr. Cummings is currently serving a 75-year sentence. As I explained in the briefs filed in this case, we're requesting that the Court either reverse the conviction because of various trial errors or alternatively remand for resentencing because the sentences on several counts are redundant and it resulted in an improper stacking of mandatory minimum… The firearms. Yeah, the firearms and the homicides, Your Honor. One of the trial errors that I believe is most important is the introduction of evidence of death threats against one of the government witnesses, Volsey. It was also hearsay, which was or was not objected to at the time. It wasn't Volsey saying he heard it, but other people told him about this. Isn't that correct? That is correct, Your Honor. And it was objected to at the time. I understand that the government in its brief claimed that this was raised for the first time on appeal, but there was a clear objection to when Volsey was asked whether he heard this directly and he said no, he was then asked if he heard it indirectly, at which point the defense objected. So the objection was not just to the death threat evidence, but to the fact that it was hearsay. That's correct. The objection to the evidence itself was addressed pretrial in the in limines. There was no specific objection to the hearsay nature of the evidence at that time because it was impossible to do. The government's proffer prior to the trial was simply that our witness will state that Cummings said this. There may not have been an objection because it wasn't hearsay because the question that was asked is after he called you names, what, if anything, did he say to you or do to you? And the answer was he didn't do anything to me. He couldn't reach me, but, you know, he made threats, things like that. What were the threats he made? He would shoot me in the face. So according to that testimony, that's what he said to Volsey. Yes, but that was after. My position is, Your Honor, it should never have gotten to that point because when he was asked if Cummings said anything to him directly, that's when he said no, and that's when he was asked, well, did he say anything indirectly? So while the government is saying that it was understood in the courtroom to the judge and to the jury that Volsey was present for these. Yes, but you're arguing that there was an erroneous ruling after which the testimony, as it were, corrected itself. Only if you assume that. From the same point of view. Not necessarily. I mean. No, I understand what you're saying. Death threats. I understand what you're saying, Your Honor. It's only, to use your phrase, correcting itself, if you assume that his answer to the question of did, you know, were you present when you heard this, if you assume that he answered that, and he never did. Now, what the government says in their brief is this is what everyone understood that was in the courtroom. Whose problem is that? I mean, it seems to me that there's an objection for lack of foundation or there's an objection for, I mean, he wasn't present, so how can he tell that? So there's a missed objection, right? Well, no, because the objection was as soon as he stated that he didn't hear it directly, he was then asked if he heard it indirectly, and that's when the defense objected at that point. He goes on and gives this testimony, which is ambiguous. Correct. It's ambiguous at best, and my position is it should have stopped as soon as he stated that he. There has to be an objection made at that point and a motion to strike. But there was, and the court did. It just, if you look at the transcript, everyone just keeps going. There's no ruling on it. So my position is that was. Your argument is you preserved that issue for appeal. The hearsay objection, absolutely. I mean, it's clearly in the transcript. There was also no limiting instruction given, which is contrary to the. Well, you asked for one, I think, at the outset, but you didn't seek it in your request to charge. Or at the moment either. That is correct, Your Honor, but. The district court said it would give the limiting instruction. And actually, the order says that the government could introduce the evidence only subject to that limiting instruction. And I would also point out that the government itself, in its request to introduce this evidence, said this would be subject to a limiting instruction. And there is a Ninth Circuit case that I cite in the brief which recognizes the concept, at least, that plain error shouldn't apply if the government itself is the one bringing up the propriety of a limiting instruction. Who should be responsible for reminding the judge? The defense attorney, the government, or who? I mean, where does the burden lie on reminding the judge, the district court, that it said it would give a limiting instruction? In this case, Your Honor, I would say that the burden should lie on either side because of the nature of death threat evidence. And that would be one more point I would make about this, is that this court has clearly stated that this is very dangerous evidence to introduce. And it said that there needs to be a clear need and an important purpose before this should be allowed in. This was admitted just for consciousness of guilt? That's what the. Was any other ground argued by the government for admitting this? No, but I would argue that the argument that the government made in summation did not frame this as consciousness of guilt evidence. It framed it as Cummings is a dangerous and violent person. And I would say that the lack of a limiting instruction amplified that problem. In what context did they argue that this simply made him a dangerous person as opposed to simply a person conscious of his guilt? Because what they said was why else would Cummings want to. This is in summation? This is in summation, yes. They argued that why else would Cummings want to murder someone? Well, that would be consciousness of guilt. But consciousness of guilt could be exemplified by much less violent means. You know, Cummings just calling him a rat bastard. I would take it the thrust of your argument is that consciousness of guilt itself is not the kind of compelling justification that would support introduction and evidence of a death threat. Absolutely, Your Honor, particularly in this case where this death threat evidence, the testimony, was purely standalone. This is not, there's the Kamar case from this court, which talked about testimony of this type being useful to explain the witness's demeanor if he was somewhat sheepish on the stand, or allowing it in if it was so intertwined with the narrative of his story that you couldn't take it out and still have that story make sense. And that is not the case in this instance. Counsel, before you sit down, could you tell me why all these errors are not harmless? Well, Your Honor, my view is that, and I understand the government's position that certain of these errors in isolation may be harmless, but when you look at the totality of the circumstances in this case and all the errors combined, I believe the aggregate result was harm that violated due process. All right. Thank you. Thank you, Your Honor. May it please the Court, my name is Michael Gerber. I'm an assistant U.S. attorney in the Southern District of New York. I represent the government on appeal. I represented the government at trial as well. Moving directly to the issues that were just being discussed about Volsey, several points. First, with regard to what was preserved or not preserved, and also with regard to whether hearsay was even called for, the confusion is that if you look at the transcript, that's pages 933 to 934, the trial transcript,  there was an initial set of questions which resulted in the testimony about name-calling, rat bastard, and there's no question that that portion of the transcript is messy. There was an objection. It was overruled. Why wouldn't calling him a rat bastard already indicate a consciousness of guilt? After all, it means he's really angry at him. Why lay it on that he threatened to shoot him in the face, which is a memorable phrase. Right. And there was, for whatever reason, if you want to ask what the impact of that was, there was no charge. The limiting instruction, you mean? Yeah. So, I mean, a few points on that. One is, with regard to what is effectively a 403 question, the court engaged in that balancing. There was a written opinion that was issued. But it could be error. We do not think it was error. We certainly do not think it was an abuse of discretion. There's lots of case law, which we cite in our brief, that death threats are analyzed under 403 the way any other consciousness of guilt evidence would be. Here, in particular. You need a special justification for something that is as toxic and potent as death threat testimony. And here, you already have his anger. He's calling him a rat bastard, probably other things as well. So, why would he be angry with him? That would reflect consciousness of guilt. And so, the question then becomes, after that, what's the justification for eliciting testimony that he threatened to shoot him in the face? Well, this court has said, I think it's in Roldan Zapata, that in looking at 403 and looking at potential prejudice, one of the critical considerations is, what is the charged offense? What is the crime or crimes that are charged? Because that bears on how prejudicial this could be. Here, we are talking about someone who was charged with two assassination-style murders. And that certainly bears, we think significantly, and I think the court agreed, on the prejudice question. But he's not entitled to less due process just because he's charged with two murders. No, of course not, Your Honor, of course. But I think there would be a different analysis if someone was charged with passing a counterfeit check. In looking at what is the prejudice, how inflammatory is this for the jury, it matters that the jury was hearing three weeks of testimony about how the defendant killed two people. In that context, I think that weighs in the balance as to how prejudicial it could be versus the probative value. And I think, Your Honor, just to make sure I'm not dodging your question, I mean, obviously, it affects the probative value as well. It's one thing to call someone a rat bastard. It is something else, for sure, to say that someone's going to shoot someone in the face. That's on both sides of the ledger, both as a consciousness of guilt and as the prejudice. As to the limiting instruction issue, you know, the appellant cites the Ninth Circuit's decision in Sousa-Martinez for the proposition that plain error should not apply when the government said it would offer a limiting instruction. The Ninth Circuit actually rejected that argument. If you look at Sousa-Martinez, page 759, what the Ninth Circuit actually said, just to read from it so there's no confusion, the Ninth Circuit said, while an argument can be made that the high hurdle of plain error should not apply in that circumstance, counsel for the defendant had an independent obligation to protect the rights of his client and should have objected on one of his many— There's no question that people have an independent obligation to protect the rights of their client, but there was no limiting instruction, and that's a fact, and that has something to do with the impact of it. And what the Ninth Circuit says on Tuesday, they can say something else on Friday. Your Honor, there is a contemporaneous objection requirement, and there's a good reason for that. This issue was teed up long before trial. In the moment, whether when the witness is testifying or when the jury is being charged, if defense counsel had wanted, they could have raised their hand and asked for a limiting instruction. And by the way, there may have been a very good reason they did not want a limiting instruction, which is this was a few seconds of testimony in a three-week trial with overwhelming evidence, and they did not want to call attention to this. Didn't you mention it in the summation, Your Honor? There is one line in the summation about the— You're not counting pages or lines. It came up, and then you mentioned it in the summation. Consciousness of guilt. Yes, we absolutely did. What about the multiplicity here? I'm interested in the fact that count two, which is firearm possession, is alleged to have taken place over a period of six years on occasions other than the fatal shooting of Jones and Copeland. So you get three mandatory consecutive sentences out of this. Yes. And it just seems like an odd way of breaking things up. I mean, couldn't you do it all on one day? Somebody at breakfast possesses a gun, and at noon they shoot somebody with it, and then you have another consecutive, and then you've got— they continue to possess it then in the afternoon, and then they shoot somebody in the evening. You get four offenses. It seems like a piling on, and if there's not a multiplicity problem, why is it there? Just to be clear, the law is clear. The Second Circuit ruled in Lindsay that for a single predicate, you can't have multiple 924C possession charges. And it's also, I think, not in dispute here. I think it's quite clear that the felon is not arguing, not disputing, that you can have multiple independent murder counts conviction sentences. And that's what the Seventh Circuit said in Curtis, and that's what this court strongly suggested in Finley. So those are the two sort of poles. Then there's this question in the middle. Okay, now you have a 924C and a 924J, two 924Js. Does that create a problem? And the limiting principle here is that for a 924J, unlike other 924C charges, possession, brandishing, discharge, for a 924J, the unit of prosecution is the murder. And that makes it different. For a 924C, the court made this very clear in Lindsay, this is the law, for a 924C possession, the unit of prosecution is the predicate offense. And to address the court's concern, in other cases, in Wallace and in Finley, the Second Circuit has also made clear you can't charge multiple 924Cs, even if you have different predicates, but it's basically for the same possession. You can't sort of double count that way. What we're saying is we think it is appropriate. Why isn't this the same possession? He has some impressive guns, but I would think he possessed the same gun the whole time through. You're just carving out two days. Well, actually, Your Honor, there was testimony at trial, and I think this is cited in our brief, that he actually possessed multiple different types of guns. And to be clear, the instruction to the jury did make clear that in the 924C on count two, they could not consider the two 924Js. And I think this is in dispute between the parties, but just to be clear about it, Yes, yes. It's pages 2322 and 2323. And here's the confusion. The appellant says that the jury was not instructed on the carve-outs, but that's not correct. What happened was, and this is at 2322, Judge Marrero read them the count, which contains the carve-outs, and then immediately thereafter instructed them on the elements. Now, Judge Marrero did not repeat a second time the carve-outs, because he had told them that 10 seconds earlier. We think that is totally sufficient. They had just been told about the carve-outs, and even if the court were to say he should have repeated it, this is not preserved. This is plain error. And we think there's no error at all, let alone a plain error. So even though in your indictment you carved out the gun on the days when the murders took place, the charge didn't make clear that that was the case. Isn't that true? No, Your Honor. Judge Marrero told them about the carve-outs explicitly. He read them the indictment, which contains the carve-outs. The jury was told that. And then immediately thereafter was instructed on the elements. So the jury knew that those two murders were carved out. Judge Marrero had just told them that. That they couldn't consider them when they were considering the knife. Right. I mean, the indictment, the count makes clear that that count excludes the two murders. The final point I would just make is just that the evidence here was overwhelming. There were six cooperators and Eric Jackson who set forth in our brief. They corroborated each other in numerous ways. Eric Jackson did not even know these cooperators. There was overwhelming proof at trial. Thank you very much. Just a minute. Excuse me, Your Honor. Thank you. Just to briefly respond to the multiplicity argument. I do agree with the government that we disagree as to what the jury charges actually say to the jury. Because the judge did read the count of the indictment. But then when he was giving the actual legal instructions on count two, he said what the government must prove beyond a reasonable doubt is that the defendant had a gun. Conceptually, there are different units of prosecution. Well, I don't want to concede that, Your Honor. If the unit of prosecution is the murder, I think that brings us into a problem with the 924J counts versus the 848 counts. Because now you're charging the exact same murder in two different counts. And, again, you're getting a stacking of these mandatory minimums. So I think that's the problem with the way the government charged this case. And I think it made it exceptionally complicated. And it did lead to this unfair result where he's simply getting mandatory minimum after mandatory minimum based on the exact same conduct. And it did have an impact. It cost him in the ultimate sentence because you're talking about second and subsequent convictions. Twenty-five years. Yeah. So this was not a trivial error in any way, shape, or form. And I think that is the point I'm trying to make in these arguments is that the government simply charged these things as complexly as they could and then opposed the defense's request for a multiple conspiracy charge while also arguing to the jury that even if you don't find him guilty of the count one conspiracy, you should still convict him of the 848 counts because those homicides could be related to some other conspiracy. And the government still has not given an explanation as to how that would actually work. And, again, as I said before, I just believe that when you look at the aggregate impact of all of these errors, it renders both the conviction and the sentence fundamentally unfair. Thank you. Thank you, Your Honor. We will reserve decision.